UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
UNITED STATES OF AMERICA,              :
                                       :       **MEMORANDUM & ORDER**
        -against-               :       17-CR-388 (DLI)
                                       :
STEVE LUNDI,                           :
                                       :
                       Defendant.    :
-------------------------------------------------------------------x

**DORA L. IRIZARRY, Chief United States District Judge:**

Defendant Steve Lundi is charged with Hobbs Act robbery conspiracy and Hobbs Act robbery, pursuant to 18 U.S.C. §§ 1951(a), and possessing and brandishing a firearm during and in relation to a crime of violence, pursuant to 18 U.S.C. § 924(c). *See* Indictment, Dkt. Entry No. 7. On March 1, 2018, the government disclosed its intention to call expert witnesses regarding latent fingerprint analysis at trial. Gov't's Letter dated Mar. 1, 2018, Dkt. Entry No. 17. On March 19, 2018, Defendant moved to preclude the government from offering expert opinion evidence that Defendant is the source of latent fingerprints recovered at the crime scene, or limit the government's expert's opinions. Not. of Mot. ("Mot."), Mem. of Law in Support of Mot. to Exclude Fingerprint Identification Evid. ("Mem. of Law"), Dkt. Entry No. 19. Defendant moved for an evidentiary hearing regarding the admissibility of said expert testimony in the alternative. *Id.*

Defendant also disclosed its intention to call its own fingerprint analysis expert in the event that its motion to exclude is unsuccessful. Def.'s Letter dated Mar. 19, 2018, Dkt. Entry No. 20. The government opposed Defendant's motion, and moved to preclude Defendant's expert. Mem. of Law in Resp. to Def.'s Mot. to Exclude Fingerprint Identification Evid. & in Support of Gov't's Mot. to Preclude Def.'s Expert ("Opp'n"), Dkt. Entry No. 22. Defendant replied. Reply Mem. of Law in Support of Mot. to Exclude Fingerprint Identification Evid. ("Reply"), Dkt. Entry No. 24.

For the reasons set forth below, Defendant's motion is denied in its entirety, and the government's motion is granted.

## BACKGROUND

On or about February 20, 2017, at approximately 2:30 p.m., Defendant and two unidentified males allegedly entered 3 K Services, a check cashing and hair salon business located at 1820 Flatbush Avenue, Brooklyn, New York. *See* Compl. ¶ 2, Dkt. Entry No. 1. One of the unidentified perpetrators brandished a handgun. *Id.* The perpetrators demanded that an employee working inside a locked glass booth within the business open the booth's door. *Id.* ¶ 4. When the employee did not comply immediately, Defendant allegedly jumped up and placed his hands on top of the glass booth. *Id*. One of the unidentified perpetrators then pointed a gun at the head of a customer inside the store. *Id.* ¶ 5. The employee opened the door to the glass booth. *Id.* One or more of the perpetrators then entered the booth, stole approximately $13,000, and exited the store. *Id*. Law enforcement officers determined that latent fingerprints obtained from the top of the glass booth were from the same source as fingerprints associated with Defendant's New York State Identification Number ("NYSID") in the automated fingerprint identification system ("AFIS") of the New York City Police Department ("NYPD"). *Id.* ¶ 7; Opp'n at 6.

On March 19, 2018, Defendant filed the instant motion pursuant to Rule 702 of the Federal Rules of Evidence ("FRE") and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), seeking to preclude the government from introducing expert opinion testimony as to latent fingerprint analysis. *See generally*, Mot. In the alternative, Defendant moved to limit the government's expert testimony. *Id.* Defendant simultaneously disclosed his intention to call at trial Simon Cole, a professor at the University of California, Irvine, Department of Criminology,

to testify regarding "forensic print analysis, in particular in the areas of accuracy and validation." *See* Def.'s Letter dated Mar. 19, 2018.

The government intends to call at trial Detective Michael Skelly of the NYPD as an expert in latent fingerprints. *See* Gov't's Letter dated Mar. 1, 2018 at 1. Detective Skelly identified Defendant's fingerprints as the source of the latent prints in this case. *See* Opp'n at 6. The government also may call NYPD Detectives Art Connolly and Edward Sanabria, although it notes that Detective Sanabria is living abroad and may not be available. *See* Gov't's Letter dated Mar. 1, 2018 at 1; Opp'n at 8 n.6. Detective Sanabria compared the latent fingerprints to known fingerprints of Defendant and concurred in Detective Skelly's conclusion. Opp'n at 7. Detective Connolly reviewed the conclusions of Detectives Skelly and Sanabria and performed his own comparison. *Id.*

Defendant contends that the instant motion is distinguishable from this Court's recent decisions in *United States v. Pitts*, which addressed: (1) defendant's motion to exclude evidence of fingerprint analysis, *see United States v. Pitts*, 16-cr-550 (DLI), 2018 WL 1116550 (E.D.N.Y. Feb. 26, 2018), and (2) the government's motion to preclude Dr. Cole, the same defense expert proposed here, from testifying for the defense, *see United States v. Pitts*, 16-cr-550 (DLI), 2018 WL 1169139 (E.D.N.Y. Mar. 2, 2018). As to the motion to exclude fingerprint evidence, Defendant argues that, in *Pitts*, the defense questioned the science of fingerprint analysis generally, whereas here, Defendant is challenging the application of that science to the specific examinations conducted in the instant case. *See* Mem. of Law at 14-15; Reply at 3. The government counters that, even if Defendant were to demonstrate deficiencies in the specific fingerprint examinations conducted in the instant case, such deficiencies would go to the weight of the evidence, not its admissibility. *See* Opp'n at 11. As to the motion to preclude Dr. Cole, the government points to

this Court's finding in *Pitts* that the defense did not "explain why cross-examination of the government's experts using [the] reports [cited in the defendant's motion] would be insufficient." 2018 WL 1169139, at *3. Defendant counters that there is no evidence that the government's experts could testify to the content of these reports, making Defendant's expert necessary. Reply at 9-10.

## DISCUSSION

I. **Legal Standard**

Under Rule 702 of the FRE and the Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, courts act as gatekeepers in determining the admissibility of purported expert testimony. To be admissible, expert testimony must "rest[] on a reliable foundation and [be] relevant to the task at hand." *Daubert*, 509 U.S. at 597. The court's inquiry is "a flexible one," *Id.* at 594, but Rule 702 requires that: (1) an expert have "scientific, technical, or other specialized knowledge [that] will help the trier of fact to understand the evidence or to determine a fact in issue"; (2) the testimony be "based on sufficient facts or data"; (3) the testimony be "the product of reliable principles and methods"; and (4) an expert must "reliably appl[y] the principles and methods to the facts of the case." Fed. R. Evid. 702.

*Daubert* provides a nonexhaustive checklist of considerations in evaluating expert testimony, including whether the methodology: (1) can be or has been tested; (2) has been subjected to peer review; (3) has a known error rate; (4) has controlling standards; and (5) has gained general acceptance in the scientific community. *Daubert*, 509 U.S. at 593-94; *Nimely v. City of New York*, 414 F.3d 381, 395-96 (2d Cir. 2005). "Nothing requires a district court to hold a formal *Daubert* hearing in advance of qualifying an expert witness." *United States v. Ashburn*, 88 F. Supp.3d 239, 244 (E.D.N.Y. 2015) (citing *United States v. Williams*, 506 F.3d 151, 161 (2d

4

Cir. 2007) ("While the gatekeeping function requires the district court to ascertain the reliability of [the expert's] methodology, it does not necessarily require that a separate hearing be held in order to do so.")).

This analytical framework recognizes that "our adversary system provides the necessary tools for challenging reliable, albeit debatable, expert testimony." *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d Cir. 2002). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

## II. Analysis

### A. The Government's Experts

Defendant argues that the government's expert testimony as to fingerprint analysis should be excluded in this case because the government has not shown that the multistep ACE-V method for analyzing fingerprints was used by its proposed expert, Detective Skelly. *See* Mem. of Law at 11. However, the government points to concrete indicators of how the ACE-V method actually was followed by Detective Skelly. *See* Opp'n at 13-15. Defendant does not argue that the method itself is flawed. *See* Mem. of Law at 11. Indeed, Defendant relies upon the addendum to the *Forensic Science in Criminal Courts: Ensuring Scientific Validity of Feature-Comparison Methods* (2016) report of the President's Council of Advisors on Science and Technology ("PCAST Report" and "PCAST Addendum"), which recognizes the ACE-V method as "scientific[ally] valid[]" and "reliabl[e]."[1]

---

[1] For a more fulsome discussion of the findings in the PCAST Report and Addendum, the parties are directed to this Court's opinion in *Pitts*, 2018 WL 1116550, at *4-5.

5

As this Court noted in *Pitts*, the government's citation to *United States v. Bonds*, No. 15-cr-573-2, 2017 WL 4511061, at *3 (N.D. Ill. Oct. 10, 2017) is instructive. The court in *Bonds* explained: "[t]o the extent [the defendant] determines that [the examiner] did not comply with the recommended PCAST procedures, [the defendant] can raise these concerns on cross-examination." This Court is not persuaded that Defendant's challenges go to the admissibility of the government's fingerprint evidence, rather than to the weight accorded to it. Moreover, as this Court noted in *Pitts*, fingerprint analysis has long been admitted at trial without a *Daubert* hearing. *Pitts*, 2018 WL 1116550, at *5. The Court sees no reason to preclude such evidence here. Accordingly, Defendant's motion to preclude fingerprint evidence is denied.

Defendant also argues that the government's expert testimony must be limited so that the government's experts do not overstate their conclusions as to the identification of Defendant as the source of the latent prints, or suggest that there is a zero error rate when fingerprint identifications are made. *See* Mem. of Law at 19-22. However, the government states that its experts will not testify to this effect. Opp'n at 18. Therefore, Defendant's concern appears to be moot. Accordingly, Defendant's motion to limit the government's testimony regarding the fingerprint evidence also is denied.

### B. Defendant's Expert

The government seeks to preclude Defendant's proposed expert, Dr. Cole, from testifying, and points to this Court's decision in *Pitts*, 2018 WL 1169139, which granted a similar motion. Opp'n at 20. The government argues that, as was the case in *Pitts*, Dr. Cole's anticipated testimony would serve to rebut testimony from the government's experts that the government does not expect to elicit. *Id.* The government argues further that Dr. Cole's additional proposed testimony, which would address the reliability of fingerprint examinations and the "best practices" to be followed

when conducting such examinations, is not distinguishable from the information contained in the reports Defendant attached to his motion, and with which he can cross examine the government's experts. *Id.* at 20-21.

Defendant claims that Dr. Cole's testimony is necessary in this case because the reports could not be introduced through the government's experts. Reply at 9-10. However, the government has given every indication that its experts would recognize these reports, such that Defendant can use them on cross-examination. *See* Opp'n at 18 ("[t]o the extent the defendant wants to cross examine the [fingerprint] examiners on the basis of the empirical studies in which the error rates cited in the defendant's motion were found, the defendant is free to do so…."). The Court finds that Dr. Cole's testimony would not assist the trier of fact. *See Pitts*, 2018 WL 1169139, at *3. Accordingly, the testimony is precluded.

### C. Defendant's Discovery Request

Defendant requests that the Court order the government to provide additional discovery, specifically: (1) detailed information about proficiency testing of fingerprint examiners; (2) contemporaneous bench notes of the examinations conducted in this case; (3) the candidate list in this case; and (4) NYPD error rates. Reply at 7. To the extent that the information in (1), (2), and (4), has not been provided to Defendant, the Court orders the government to produce it in a timely fashion. As to the information requested in (3), Defendant has not explained adequately its probative value as compared with the prejudicial effect it might have in confusing a jury. Defendant has not alleged, for example, that one of the names on the candidate list is actually the source of the latent prints, nor has Defendant noticed an expert who might make such a conclusion. Accordingly, that request is denied.

## **CONCLUSION**

For the reasons set forth above, Defendant's motion is denied in its entirety, as is Defendant's request for a hearing, and the government's motion is granted.

SO ORDERED.

Dated: Brooklyn, New York
July 10, 2018

/s/
DORA L. IRIZARRY
Chief Judge